UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PENNY S. RICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:15-cv-00083-RLY-MJD |
| | ) |
| CAROLYN COLVIN Acting Commissioner of Social Security, | ) ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Penny S. Rice ("Rice") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). See 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the Court **REVERSE** the decision of the Commissioner and **REMAND** the matter for further consideration.

**I.  Background**

Rice filed her applications for DIB and SSI on May 15, 2012, alleging October 31, 2011 as the onset date of her disability. [R. at 13.] In her disability report filed in conjunction with her applications, Rice listed poor eyesight, depression, neck and back pain, arthritis, bipolar disorder, migraine headaches, and paranoia as her disabling impairments.[1] [R. at 188.] Rice's

---

[1] Rice recited the relevant factual and medical background in her opening brief. [*See* Dkt. 15.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 18.] Because these facts involve Rice's

1

applications were denied initially on June 28, 2012 and upon consideration on September 20, 2012. [R. at 13.] Rice timely requested a hearing on her applications, which was held before Administrative Law Judge Roxanne Fuller ("ALJ") by video teleconference on July 23, 2013. [*Id.*] The ALJ issued her decision on October 7, 2013, again denying Rice's applications for DIB and SSI [R. at 29], and on November 21, 2014 the Appeals Council denied Rice's request for review, making the ALJ's decision the final decision for the purposes of judicial review [R. at 1-6]. Rice timely filed her Complaint with this Court on January 21, 2015, which Complaint is now before the Court.

## II.  Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment

---

confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate specific facts as needed below.

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes and regulations found within cited court decisions.

appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform her past relevant work or has no past relevant work but she can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity, identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning" and "build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

### III.  The ALJ's Decision

In her decision, the ALJ first determined that Rice met the insured status requirements of the Act through December 31, 2011 and has not engaged in substantial gainful activity since October 31, 2011, the alleged onset date.  [R. at 15.]  At step two, the ALJ found that Rice's "fibromyalgia; degenerative disc disease; cervical spondylosis; carpel tunnel syndrome; right eye blindness; dry eye syndrome; migraines; depression; psychotic disorder; anxiety disorder; and substance dependence" are all severe impairments, as defined by the Act, because they have a more than minimal effect on Rice's ability to do basic work activities.  [R. at 16.]  However, at step three the ALJ found that Rice does not have an impairment that meets or medically equals a Listing by evaluating the following: Section 1.00 for her degenerative disc disease, cervical spondylosis, and carpal tunnel syndrome; Section 2.00 for her right eye blindness and dry eye syndrome; Section 11.00 for her fibromyalgia, migraines, and carpal tunnel syndrome; and Section 12.00 for her depression, psychotic disorder, anxiety disorder, and substance dependence.  [R. at 16.]  Specifically, the ALJ evaluated Rice's mental impairments under Listings 12.03, 12.04, 12.06, and 12.09.  [R. at 16-18.]

At step three but before step four, the ALJ, after "careful consideration of the entire record," determined that Rice has the residual functional capacity to perform "light work" with the following additional limitations:

> [O]ccasional push or pull with both arms; never climb ramps or stairs; never climb ladders, ropes, or scaffolds; never balance; occasional stoop, crouch, kneel, crawl; frequent reaching and overhead reaching with both arms; frequent handling objects, that is gross manipulation with both hands; frequent fingering, that is fine manipulation of items no smaller than the size of a paper clip with both hands; frequent feeling with both hands; occasional exposure to unprotected heights; limited to occupations requiring only occasional peripheral acuity and depth perception; able to perform simple, routine, and repetitive tasks; and only occasional superficial interaction with co-workers, public, and supervisors.

[R. at 18.]  Having made this residual functional capacity (RFC) assessment, the ALJ found at step four that Rice is unable to perform any past relevant work.  [R. at 26.]  However, considering Rice's age, education, work experience, and RFC, the ALJ found at step five that there are jobs that exist in significant numbers that Rice can perform.  [R. at 27.]  Specifically, the ALJ found that Rice is able to perform work as an office mail clerk, an office helper, and a cafeteria attendant.  [*Id.*]  Based on these findings, the ALJ concluded that Rice is not disabled, as defined by the Social Security Act.  [R. at 28.]

## IV.   Discussion

On appeal, Rice makes several arguments as to why the decision of the Commissioner should be reversed.  [Dkt. 15.]  First, and most prominently, Rice asserts that substantial evidence does not support the ALJ's step three finding that her combined impairments to not meet or medically equal Listing 1.04, and the ALJ erred by offering only a perfunctory analysis of the listing.  [*Id.* at 22-26.]  In response to this argument, the Commissioner asserts that Rice failed to present sufficient evidence to support a finding of disability pursuant to Listing 1.04, citing extensively to Rice's brief, the requirements of Listing 1.04, and portions of the record in support of her response.  [Dkt. 18 at 9-12.]

At step three, the ALJ "must discuss the listing by name and offer more than perfunctory analysis of the listing" in order to sufficiently consider whether a claimant's impairment meets or medically equals a Listing.  *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).  Examples of analyses that the Seventh Circuit has found to be a perfunctory step three analysis include a "cursory Listing analysis" that fails to articulate rationale for denying benefits, a "two-sentence consideration of the Listing of Impairments," and analysis that is "devoid of any analysis that would enable meaningful judicial review."  *Id.* at 935-36.  In *Minnick*, the Seventh Circuit then

concluded that the following analysis conducted by an ALJ was "the very type of perfunctory analysis we have repeatedly found inadequate":

> The claimant's degenerative disc disease was evaluated under Listing 1.04 (disorders of the spine). The evidence does not establish the presence of nerve root compression, spinal arachnoiditis, or spinal stenosis resulting in pseudoclaudication, as required by that listing.

*Id.*  Where an ALJ so fails to "build a logical bridge from the evidence to her conclusion," an order reversing the decision of the ALJ and remanding the matter for further consideration is the appropriate remedy.  *See id.* (recounting several Seventh Circuit cases resulting in reversal and remand because the ALJ provided inadequate analysis at step three).

> In this matter, the relevant step three analysis reads as follows:
>
> I assessed the fibromyalgia, degenerative disc disease, cervical spondylosis, and carpal tunnel syndrome under §1.00 <u>Musculoskeletal System</u>, Appendix 1; right eye blindness and dry eye syndrome under §2.00 <u>Special Senses and Speech</u>, Appendix 1; and fibromyalgia, migraines and carpal tunnel syndrome under §11.00 <u>Neurological</u>, Appendix 1.  However, the medical evidence falls short of the criteria of the section, and no medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

[R. at 16 (emphasis in original).]  This "analysis" is even less helpful in many respects than the perfunctory analysis that was found to be insufficient in *Minnick*.  First, the ALJ here fails to mention any particular Listing, instead grouping together distinct impairments, such as degenerative disc disease with carpal tunnel syndrome and fibromyalgia with migraines, and referring to the section of Listings as a whole instead of each relevant Listing—Section 1.00 alone covers seven specific Listings.  After referring broadly to three sections' worth of Listings, the ALJ generally writes, in one sentence, that "the medical evidence falls short of the criteria of the section" and "no medical source has mentioned finings equivalent in severity to the criteria of any listed impairment," which statements the Commissioner claims are sufficient to enable

meaningful judicial review of the ALJ's analysis of eight of Rice's severe impairments.  That is not the case.

Perhaps the most apt example of an analysis sufficient to enable meaningful judicial review is the ALJ's review of Rice's mental impairments under Section 12.00.  Instead of referring generally to Section 12.00, the ALJ notes that she considered Rice's mental impairments, singly and in combination, under Listings 12.03, 12.04, 12.06, and 12.09. [R. at 16.]  The ALJ continues, explaining that, in making her finding that the Listings are not met, she considered whether the "paragraph B" criteria of each Listing was satisfied. [*Id.*]  In order to explain her consideration of the criteria, the ALJ articulates the Paragraph B requirements and reviews, in over one full page of single-spaced typeface, evidence from throughout the record to support her conclusions. [*Id.* at 16-18.]

Such analysis is in stark contrast to the ALJ's treatment of Rice's physical impairments, including those "assessed" under Section 1.00.  While the Commissioner's brief contains its own thorough discussion of the evidence and its evaluation under Listing 1.04 in particular, the Court cannot engage in its own analysis of the record or reweigh the evidence.  *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  Instead, the Court must determine whether the ALJ built "a logical bridge from the evidence to her conclusion" sufficient to avoid reversal, as explained in *Minnick*.  Here, the ALJ's sweeping, one sentence statement of inadequacy of the medical evidence without citation to any portion of the record on its own is insufficient to enable meaningful judicial review.  Additionally, the ALJ's failure to mention even one particular Listing within Sections 1.00, 2.00 or 11.00, let alone which elements of the relevant Listings were not met, is likewise a gross insufficiency.

In response to Rice's assertion that a perfunctory analysis alone warrants reversal and remand, the Commissioner claims that "the Seventh Circuit does not require a remand when the evidence invoked on appeal does not establish the required criteria of the listing." [Dkt. 18 at 9 (citing to *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002)).] While Rice acknowledges that *Simms* implies that there is a threshold requirement that the claimant present sufficient evidence that could meet the criteria of the Listing in question, Rice also indicates that, conversely, "the Seventh Circuit has continued to remand on the basis of a poorly articulated listing analysis without deciding the evidence invoked on appeal satisfied the relevant listing." [Dkt. 15 at 23 (citing to *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) ("where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded"); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).]

Looking to a more recent Seventh Circuit case on this point, *Minnick* does not refer to a threshold requirement that that the claimant present evidence on appeal to prove that a Listing might be met. 775 F.3d at 935-36. Only after stating that the ALJ's analysis was "the very type of perfunctory analysis we have repeatedly found inadequate" did the Seventh Circuit add that, "[a]s a particular example of the Listing analysis' inadequacy, the ALJ failed to acknowledge several aspects of the record that could in fact meet or equal Listing 1.04." *Id.* at 936 (further highlighting relevant evidence from the record). Noting portions of the record "as an example" of the ALJ's inadequacy is an entirely different analysis than requiring the claimant to make such a presentment on appeal. Thus, the extent to which the Seventh Circuit requires a claimant to articulate a step three analysis on appeal is uncertain, at best, but in an abundance of caution this Court will examine the evidence presented by Rice on appeal.

Additionally, the Commissioner asserts that Rice "has not shown enough findings to equal the required Listing 1.04 criteria for disorders of the spine." [Dkt. 18 at 9.] It is not up to the Commissioner, however, to determine on appeal whether an impairment medically equals a Listing, as "[a] finding of medical equivalence requires an expert's opinion on the issue." *Minnick*, 775 F.3d at 935. In fact, when an ALJ "simply assume[s] the absence of equivalency without any relevant discussion," such an assumption "cannot substitute for evidence and does not support the decision to deny benefits." *Barnett v. Barnhart*, 381 F.3d 664, 671 (7th Cir. 2004) (concluding that the ALJ's "two-sentence consideration of the Listing of Impairments is inadequate and warrants remand"). In this instance, the Court finds that Rice has presented sufficient evidence such that a proper step three analysis could result in a conclusion that Rice's impairments meet or medically equal Listing 1.04. [*See* Dkt. 15 at 23-26; Dkt. 20 at 1-4.]

Accordingly, the Court finds that the ALJ's perfunctory step three "analysis," if one dares call it that, is insufficient under the standards set forth by the Act and interpreted by the Seventh Circuit. Because this issue is dispositive, the Court need not address Rice's additional arguments, and the Court's silence on those issues should not be taken as implication either in favor or against their validity. Therefore, the ALJ's decision should be **REVERSED** and the matter **REMANDED** for further consideration.

### V.  Conclusion

For the aforementioned reasons, the decision of the Commissioner should be **REVERSED and REMANDED** for further consideration. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days

9

after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 09/11/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com

Thomas B. Browder
KELLER & KELLER
tomb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov